1   BARRY J. PORTMAN
    Federal Public Defender
2   GEOFFREY A. HANSEN
    Chief Assistant Federal Public Defender
3   19th Floor Federal Building – Box 36106
    450 Golden Gate Avenue
4   San Francisco, CA 94102
    Telephone:  (415) 436-7700
5
    Counsel for Defendant Smith
6

7

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )    No. CR 3 - 08 - 70090 MEJ
                                       )
12                 Plaintiff,          )    **DEFENDANT'S PRE- HEARING**
                                       )    **MEMORANDUM RE: DETENTION**
13  vs.                                )
                                       )
14  DEMETRIUS SMITH,                   )
                                       )
15                 Defendant.          )
    _____)
16

17
                           **INTRODUCTION**
18
          Mr. Smith first appeared before this Court on February 21, 2008.  He is charged with a
19
    single violation of 21 U.S.C. § 841(a)(1).  The Government asked at the initial appearance that
20
    the defendant be detained on the basis of flight risk and danger to the community.
21
          The defendant noted his objection to the use of proffers by the Government at the
22
    detention hearing, and demanded that the Government produce witnesses at the detention hearing
23
    if their testimony/statements were to be relied upon by the Government.
24
          This court asked the parties to submit briefing on this issues, and this memorandum is
25

26

    DETENTION MEMORANDUM              1

1  filed in response to that order.

2  **FACTS**

3  Although discovery has yet to be provided in this matter, the complaint indicates that Mr.

4  Smith was arrested by San Francisco police officers after a search a his person revealed that he

5  was carrying a small amount of marijuana. A subsequent search of his mother's home resulted in

6  the seizure of a relatively small amount of rock cocaine (11.8 grams) which the Government

7  claims was found in a pair of pants belonging to the defendant. The records and files in this

8  matter indicate that Mr. Smith was originally charged in state court with possession of drugs (the

9  offenses which are now the subject of this federal prosecution), and Mr. Smith pleaded guilty to

10  possession of the marijuana. He was ordered to spend 55 days in home detention. Mr. Smith

11  was unable to serve this sentence, however, because federal authorities picked him up on the

12  federal charges pending before this court.

13

14  **ARGUMENT**

**I.    The Defendant Has A Sixth Amendment Right To Confront Adverse Witnesses At A Detention Hearing**

15

16  Although it has not specifically indicated that it plans to present some or all of its

17  evidence supporting its detention request by way of proffer at the detention hearing, the

18  defendant presumes that, in accordance with the procedure usually followed by the United States

19  Attorney's Office in this district, it will attempt to make proffers and not produce live testimony

20  at the hearing.

21  The defendant hereby again gives notice that he will object to the use of proffers by the

22  Government, and instead asserts his right under both the Sixth Amendment and the Due Process

23  Clause to confront adverse witnesses.

24  **A. Hearing Procedures Under the Bail Reform Act of 1984**

25  The Bail Reform Act of 1984, codified in 18 U.S.C. § 3142, greatly expanded the power

26  of the Government to hold defendants in pretrial detention. Prior to the passage of the Act, bail

1    served the sole purpose of preventing flight.  *See* Joseph L. Lester, Presumed Innocent, Feared

2    Dangerous: the Eighth Amendment's Right to Bail, 32 N. Ky. L. Rev. 1, 38 (2005).  In passing

3    the Bail Reform Act, Congress intended to "give the courts adequate authority to make release

4    decisions that give appropriate recognition to the danger a person may pose to others if released."

5    *United States v. Salerno*, 481 U.S. 739, 742 (1987) (quoting S. Rep. No. 98-225, at 3 (1983),

6    reprinted in 1984 U.S.S.C.A.N. 3182, 3189).  Thus, a court determining whether to release a

7    defendant on bail must now consider not only whether release conditions will "reasonably assure

8    the appearance of the person," but also whether pretrial release will "endanger the safety of any

9    other person or the community."  18 U.S.C. § 3142(b).

10       In order to detain a defendant before trial, a court "shall hold a hearing to determine

11    whether any condition or combination of conditions . . . will reasonably assure the appearance of

12    such person as required and the safety of any other person and the community."  18 U.S.C. §

13    3142(f).  The detention hearing procedure places the burden of proof on the prosecution and

14    affords the defendant certain basic rights, but it does not provide the entire array of procedural

15    safeguards available at trial:

16       At the hearing, such person has the right to be represented by counsel, and, if financially
         unable to obtain adequate representation, to have counsel appointed.  The person shall be
17       afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who
         appear at the hearing, and to present information by proffer or otherwise.  The rules
18       concerning admissibility of evidence in criminal trials do not apply to the presentation
         and consideration of information at the hearing.  The facts the judicial officer uses to
19       support a finding . . . that no condition or combination of conditions will reasonably
         assure the safety of any other person and the community shall be supported by clear and
20       convincing evidence.

21    *Id.*  Thus, while the defendant has the right to cross examine adverse witnesses who appear at the

22    hearing, the language of the Act does not address the question of whether the defendant has the

23    right to confront those witnesses the government does not call upon to testify.  *See id.*  In

24    addition, while it specifically allows a *defendant* to present evidence by way of proffer, the Act is

25    "silent upon the question whether the *Government* may do so."  *United States v. Smith*, 79 F.3d

26

DETENTION MEMORANDUM              3

1208, 1210 (D.C. Cir. 1996) (emphasis added).

Nevertheless, courts which were called upon early in the Act's history to interpret whether the Government could proceed by way of proffer held that the Government could do so. *See id. See also United States v. Gaviria*, 838 F.2d 667 (11th Cir. 1987); *United States v. Martir*, 782 F.2d 1141 (2d Cir. 1986); *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986); *United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985). In reaching this conclusion, the courts did not look to the plain text of the Bail Reform Act, but relied on the Act's history, noting that "the Government regularly proceeded by way of proffer under the District of Columbia bail statute that served as the model for the Act. That it could continue to do so under the nationwide Act literally goes without saying." *Smith*, 79 F.3d at 1210 (internal citations omitted).

In addition, several courts, including the Ninth Circuit, interpreted the Bail Reform Act so as to deny a defendant an absolute right, at least under the Due Process Clause, to confront and cross-examine witnesses whom the government has not called to testify. *See Winsor*, 785 F.2d at 756; *United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985); *Smith*, 79 F.3d at 1210. The defendants in these cases argued that due process mandates a right to confront adverse witnesses in detention hearings. *Winsor*, 785 F.2d at 756; *Smith*, 79 F.3d at 1210. The courts rejected these due process challenges by pointing to the limited purpose of detention hearings:

> A pretrial detention hearing, however, is neither a discovery device for the defense nor a trial on the merits. The process that is due is only that which is required by and proportionate to the purpose of the proceeding. That purpose includes neither a reprise of all the evidence presented before the grand jury, nor the right to confront non-testifying government witnesses.

*Smith*, 79 F.3d at 1210 (internal citations omitted). Similarly, the Court in *Winsor* rejected an argument that "due process requires that a defendant in a pretrial detention hearing be afforded rights of confrontation and cross-examination." 785 F.2d at 756.

Although decisions such as *Smith* and *Winsor* appear to limit procedural safeguards under the Bail Reform Act, they do not bar the application of the Sixth Amendment's Confrontation Clause to detention hearings. First, these decisions came in response to due

process challenges and did not address the issue of whether the Sixth Amendment applies in

detention hearings.[1]  Courts have recognized the distinction between a right to confrontation that

emanates from the Due Process Clauses of the Fifth and Fourteenth Amendments and the Sixth

Amendment's Confrontation Clause.  *See United States v. Barraza,* 318 F. Supp.2d 1031, 1033

(S.D. Cal. 2004) ("[T]he right to confrontation in a supervised release revocation hearing is a due

process, not a Sixth Amendment, right.").  Thus, decisions that limit the *due process* right to

confrontation in pre-trial detention hearings have little bearing on the question of whether the

*Sixth Amendment* right to confrontation applies.

In addition, the *Smith* and *Winsor* line of cases preceded the Supreme Court's decision in

*Crawford v. Washington,* 541 U.S. 36 (2004) –  a case which announced a "watershed rule" that

revolutionized Confrontation Clause jurisprudence.  *See Bockting v. Bayer*, 399 F.3d 1010, 1019

(9th Cir. 2005) ("The difference between pre- and post-*Crawford* Confrontation Clause

jurisprudence is not the sort of change that can be dismissed as merely incremental.  Instead, it is

an absolute pre-requisite to fundamental fairness.").  Because *Crawford* fundamentally changed

the role of the Confrontation Clause in criminal prosecutions, the application of the right to

confrontation in detention hearings must be re-examined in light of this decision.

**B.  The Supreme Court's Decision in *Crawford v. Washington***

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him." U.S. Const. amend. VI.  Until recently, Confrontation Clause jurisprudence was governed

by *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980),  which admitted hearsay statements where the

declarants were unavailable and the statements bore adequate "indicia of reliability."  Such

reliability was inferred where the evidence fell within a "firmly rooted hearsay exception."  *Id.*

---

[1]  Although the defendant in *Smith* cited the Confrontation Clause as well as the Due
Process Clause in making his claim, the Court's opinion never addressed his Sixth Amendment
argument, focusing instead on the due process challenge.  *See* 79 F.3d at 1210.

1    In *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), however, the Supreme Court

2 abandoned the *Roberts* reliability test insofar as it applied to testimonial evidence. Following a

3 thorough historical analysis of the right to confront adverse witnesses, the *Crawford* Court found

4 that the "the principal evil at which the Confrontation Clause was directed was the civil-law

5 mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against

6 the accused." *Id.* at 50. The *Roberts* test failed to accomplish the purposes of the Confrontation

7 Clause because it of its unpredictability and its "demonstrated capacity to admit core testimonial

8 statements that the Confrontation Clause plainly meant to exclude," such as "accomplice

9 confessions." *Id.* at 63-64. Instead of focusing on reliability and "firmly rooted hearsay

10 exceptions," the Court in *Crawford* held that "the Framers would not have allowed admission of

11 *testimonial* statements of a witness who did not appear at trial unless he was unavailable to

12 testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54

13 (emphasis added). Although the Court did not "spell out a comprehensive definition of

14 'testimonial,'" the term applies "at a minimum to prior testimony at a preliminary hearing, before

15 a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

16    In this district, the Government almost exclusively proceeds at a detention hearing by way

17 of proffer, which is simply another way of saying that it introduces rank hearsay without any

18 attempt to show that the hearsay satisfies a hearsay exception. Even under the old *Roberts* test,

19 this use of hearsay arguably would be inappropriate – but certainly under *Crawford* the

20 introduction of this hearsay is improper if in fact the Sixth Amendment right to confrontation

21 applies at a detention hearing.

22    The Supreme Court in *Crawford* did not address the question of whether the Sixth

23 Amendment right to confront adverse witnesses applies outside of the trial setting. The language

24 of the Sixth Amendment itself, however, states that the right exists in all "criminal prosecutions,"

25 a phrase which encompasses more than the trial itself. *See* U.S. Const. amend. VI.*; Cf. United*

26 *States v. Abuhamra,* 389 F.3d 309, 323 (2d Cir. 2004) (Sixth Amendment right to public trial

1    applies to bail hearings).  In addition, several passages of the Constitution refer to "trials" as

2    distinct from "criminal prosecutions."  *See*, *e.g.* U.S. Const. art. III, § 2, cl. 3 ("The *trial* of all

3    Crimes, except in Cases of Impeachment, shall be by jury."); U.S. Const. amend. VI ("In all

4    criminal *prosecutions*, the accused shall enjoy the right to a speedy and public *trial*."); U.S.

5    Const. amend VII ("[T]he right to *trial* by jury shall be preserved.") (emphasis added).  This

6    shows that the Framers did not intend to use the terms "trial" and "criminal prosecution"

7    interchangeably.  "Indeed, the Sixth Amendment's opening phrase, 'in all criminal prosecutions,'

8    seems calculated to reach conduct before and beyond the time and place of a criminal trial."

9    John C. Douglass, Admissibility as Cause and Effect: Considering Affirmative Rights Under the

10   Confrontation Clause, 21 QLR 1047, 1065-66 (2003).   Thus, the Sixth Amendment's

11   Confrontation Clause protects the rights of defendants not only at the trial, but also at all other

12   stages of the "criminal prosecution," including pretrial detention hearings under the Bail Reform

13   Act.[2]  Accordingly, the rules set forth in *Crawford* should apply in detention hearings.

14           The Second Circuit's decision in *United States v. Abuhamra*, 389 F.3d 309 (2d Cir.

15   2004), is instructive in that regard.  There, the court was confronted with the issue whether the

16   Government could proceed in a detention hearing by way of *ex parte* submissions.  When

17   examining the propriety of such submissions, the court discussed both the applicability of the

18   Due Process Clause and the Sixth Amendment to detention hearings – and found that both

19   applied equally to bail hearings. With regard to the latter amendment, the court recognized that

20   the Sixth Amendment's guarantee of a public trial on its face only applied to *trials,* but noted that

21

22           [2] In *Pennsylvania v. Ritchie,* the Supreme Court stated that "the right to confrontation is a
     *trial* right, designed to prevent improper restriction son the types of questions that defense

23   counsel may ask during cross-examination." 480 U.S. 39, 52 (1987) (emphasis in original).  This
     statement does not suggest, however, that the Confrontation Clause has no applicability in

24   pretrial proceedings.  Rather, the Court in *Ritchie* was merely pointing out that the Confrontation
     Clause is not a "constitutionally compelled rule of pretrial discovery," and that it did not entitle a

25   defendant to examine a Children and Youth Services file in order to obtain information that
     would make cross-examination more effective.  *Id.*  *Ritchie* did not address the question of

26   whether the defendant has a right to cross-examine adverse witnesses in pretrial hearings.

1    the Supreme Court had nonetheless construed this right expansively to include jury selection, *see*

2    *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501 (1984); suppression hearings,

3    *see Waller v. Georgia,* 467 U.S. 39 (1984); and pre-indictment probable cause hearings, *Press*

4    *Enterprise Co. v. Superior Court,* 478 U.S. 1 (1986).  In light of this authority, the Second

5    Circuit had no problem extending the right to a public trial guaranteed by the Sixth Amendment

6    to bail hearings.  *Abuhamra,* 389 F.3d at 323 ("Bail hearings fit comfortably within the sphere of

7    adversarial proceedings closely related to trial").  If the right to a public trial contained in the

8    Sixth Amendment is applicable to a detention hearing, there is no reason to conclude that any of

9    the other rights contained in the Sixth Amendment, such as the right to confront adverse

10   witnesses, does not extend to bail hearings as well.

11          In fact, the argument in favor of extending the Sixth Amendment's right to confront

12   adverse witnesses to bail hearings is even stronger than are the arguments in favor of extending

13   the right to a public trial to such hearings.  While the Sixth Amendment refers to the right to

14   public *trials*, the right to confront adverse witnesses applies to criminal *prosecutions.*   If the

15   former right extends to bail hearings, then certainly the latter right does as well.  In addition, the

16   entire thrust of the *Crawford* case related to the dangers of having hearsay, and even hearsay

17   which would otherwise come in under a well-established hearsay exception, from being

18   introduced against a defendant at trial.  At a detention hearing, a defendant usually has not been

19   indicted and has fewer of the procedural rights available then does a defendant whose case has

20   proceeded through the system all the way to trial.  Yet the detention hearing can result in exactly

21   the same harm so strenuously condemned by the *Crawford* court – the danger of having a

22   defendant's liberty taken from him or her on the basis of unreliable and untested evidence.

23   Clearly, the right to confront witnesses should be extended to bail hearings.

24          In other cases where the Government has replied to these arguments, it has made the

25   rather curious argument that because any incarceration ordered after a detention hearing is

26   considered a "civil commitment," then bail hearings are in fact civil proceedings and the Sixth

1    Amendment does not apply.

2         While it is true that for purposes of arguments regarding the Eight Amendment's

3    prohibition against cruel and unusual punishment that courts have ruled that the pretrial

4    incarceration of a defendant is a form of civil commitment and is not punishment, it does not

5    follow that a bail hearing is a civil proceeding.  The law allowing the Government to seek

6    detention is contained in Title 18, not Title 28.  The only procedural rule relating to detention

7    hearings is found in Fed. R. Crim. P. 5 (d)(3), which provides that detention may be ordered as

8    allowed by statute or "*these* rules."  Thus, there is no civil rule or statute which allows for the

9    detention of a defendant.  If the Government is arguing that it is legally able to obtain the

10   detention of the defendant under some authority contained in the rules regarding civil matters, it

11   should identify those rules to the Court. There are no such rules, and it is frivolous to assert that a

12   bail hearing is in fact a civil matter separate from the criminal prosecution itself.

13        But if the Government persists in making this claim, the defendant would be happy to

14   have the Court construe detention hearings as civil matters.  As such, the defendant would then

15   be free to depose any potential witnesses prior to the detention hearing and to seek other

16   discovery allowed for under the civil rules of procedure.  *See* Fed. R. Civ. P 26.

17        There is no real issue that detention hearings are to be construed as part of the criminal

18   proceedings where the Sixth Amendment should apply.

19   **C. *Crawford* As Applied To Parole Revocation Proceedings**

20        As is discussed above, the federal courts have not directly addressed the question whether

21   the *Crawford* decision applies to pretrial detention hearings.  Nevertheless, lower court decisions

22   in the somewhat related area of parole and probation revocation hearings show that the question

23   about whether *Crawford* extends to these forms of hearings is unsettled.  *Compare United States*

24   *v. Hall*, 419 F.3d 980 (9th Cir. 2005) (holding that *Crawford* does not apply to the admission of

25   hearsay evidence during revocation of supervised release proceedings) *with Ash v. Reilly*, 354 F.

26   Supp. 2d 1 (D.D.C. 2004) (holding that *Crawford* is binding precedent for parole revocation

1    hearings).  These cases are worthy of analysis.

2         Parole revocation proceedings are similar to detention hearings in that neither are part of

3    the trial itself.  Unlike detention hearings, however, "the revocation of parole is *not part of the*

4    *criminal prosecution*," and thus the full panoply of rights due a defendant in such proceeding

5    does not apply to parole revocations.  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (emphasis

6    added).  On the other hand, the defendant in a detention hearing, who has not yet been convicted

7    and is *presumed innocent*, obviously enjoys a stronger right to confront adverse witnesses than

8    the a parolee who has already suffered a conviction.  *See Herrera v. Collins*, 506 U.S. 390, 398

9    (1993) ("A person when first charged with a crime is entitled to a presumption of innocence . . . .

10   Other constitutional provisions also have the effect of ensuring against the risk of convicting an

11   innocent person.").

12        In *Ash v. Reilly*, the court held that a defendant in a parole revocation hearing has a Sixth

13   Amendment right to confront adverse witnesses.  453 F. Supp. 2d 1, 7 (D.D.C. 2004).  The

14   defendant recognizes that several federal courts, including the Ninth Circuit, have disagreed with

15   *Ash.  See, e.g. United States v. Hall*, 419 F.3d 980 (9th Cir. 2005); *United States v. Kirby*, 418

16   F.3d 621 (6th Cir. 2005); *United States v. Martin*, 382 F.3d 840 (8th Cir. 2004); *United States v.*

17   *Aspinall*, 389 F.3d 332 (2d Cir. 2004), *abrogation on other grounds recognized by United States*

18   *v. Fleming*, 397 F.3d 95 (2d Cir. 2005).  However, what is crucial for purposes of this

19   memorandum is the fact that the Ninth Circuit in *Hall* recognized that the Sixth Amendment

20   applies in "criminal prosecutions," and denied Hall's request that he be allowed to confront

21   adverse witnesses as a matter of right *only* because supervised release revocation hearings, like

22   parole and probation revocation hearings, are not part of the "criminal prosecution:"

23        Because "[r]evocation deprives an individual, not of the absolute liberty to which every
          citizen is entitled, but only of the conditional liberty properly dependent on observance of
24        special parole restrictions" the full protection provided to criminal defendants, including
          the Sixth Amendment right to confrontation, does not apply to them.  Rather, a due
25        process standard is used to determine whether hearsay evidence admitted during
          revocation proceedings violates a defendant's rights.

26

419 F.3d at 985 (internal citations omitted).

Therefore, under *Hall*, defendants in detention hearings have a claim of entitlement to the Sixth Amendment confrontation right because detention hearings *are* part of the criminal prosecution. *See* discussion *supra. See also, e.g., In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986) ("Moreover, even if plea hearings and sentencing hearings are not considered a part of the trial itself, they are surely as much *an integral part of a criminal prosecution* as are . . . . *bail hearings*.") (emphasis added). *See also United States v. Baucum*, 2001 WL 1448604 at 2 (D. Ariz. 2001) ("No one can seriously contend that a detention hearing is not a critical stage of a prosecution where the liberty of a defendant hangs in the balance."). Thus, detention hearings fall within the ambit of the Sixth Amendment's Confrontation Clause, even if proceedings to revoke parole, probation or supervised release do not.

**D.    The Sixth Amendment Right to Confrontation, as Interpreted in *Crawford v. Washington*, Must Apply in Detention Hearings Under the Bail Reform Act.**

As discussed above, pretrial detention hearings under the Bail Reform Act are part of the "criminal prosecution," and defendants in such hearings, therefore, enjoy the protection of the Sixth Amendment.  Moreover, the significant liberty interests at stake in detention hearings, as well as the time-honored presumption of innocence, require that defendants in detention hearings be given the right to cross-examine all adverse witnesses as a matter of policy.

The Supreme Court has stated that "[a] person when first charged with a crime is entitled to the presumption of innocence." *Herrera v. Collins*, 506 U.S. 390, 398 (1993).  The presumption of innocence plays a particularly important role during pretrial detention hearings because of their potential to influence the outcome of a trial:

> Jurors may speculate that the accused's pretrial incarceration, although often
> the result of his inability to raise bail, is explained by the fact that he poses a
> danger to the community or has a prior criminal record; a significant danger
> is thus created of corruption of the fact finding process through mere suspicion.

*Estelle v. Williams*, 425 U.S. 501, 518 (1975).  In addition, pretrial detention imposes immense burdens on presumptively innocent defendants – burdens that the courts do not impose lightly:

1
2
3
4

> The time spent in jail awaiting trial has a detrimental impact on the individual.
> It often means loss of a job; it disrupts family life; and it enforces idleness.
> Most jails offer little or no recreational or rehabilitative programs. The time
> spent in jail is simply dead time. Moreover, if a defendant is locked up, he is
> hindered in his ability to gather evidence, contact witnesses, or otherwise prepare
> his defense. Imposing those consequences on anyone who has not yet been
> convicted is serious. It is especially unfortunate to impose them on those
> persons who are ultimately found to be innocent.

5

*Barker v. Wingo*, 407 U.S. 514, 532-33 (1972). Indeed, the gravity of pretrial detention has led

6

some commentators to argue that "[t]he defendant's liberty is at stake at a bail hearing much as it

7

is at trial." Joseph L. Lester, Presumed Innocent, Feared Dangerous: the Eighth Amendment's

8

Right to Bail, 32 N. Ky. L. Rev. 1, 45 (2005).

9

    Consequences of such magnitude necessitate strong procedural safeguards in pretrial

10

detention hearings, and the right to cross-examine adverse witnesses is essential to procedural

11

fairness. The Supreme Court has stated that "[t]he Confrontation Clause provides two types of

12

protections for a criminal defendant: the right physically to face those who testify against him,

13

and the right to cross examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (citing

14

*Delaware v. Fensterer*, 474 U.S. 15, 18-19 (1985)). Cross-examination has been described as

15

"the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399

16

U.S. 149, 158 (1970). It offers a defendant the "the opportunity to show that a witness is biased,

17

or the testimony is exaggerated or unbelievable." *Ritchie*, 480 U.S. at 51-52. As the Supreme

18

Court put it, "this type of evidence can make the difference between conviction and acquittal."

19

*Id.* at 52. Without the right to confront adverse witnesses, the detention hearing process allows

20

the incarceration of presumptively innocent defendants based on evidence whose veracity and

21

reliability have not been tested "in the crucible of cross-examination." *Crawford*, 541 U.S. at 62.

22

Thus, defendants facing pretrial detention under the Bail Reform Acts must have the right to

23

confront and cross-examine all adverse witnesses, regardless of whether the government intends

24

to call them to the stand.

25

    The defendant appreciates the fact that Magistrate Judge Zimmerman rejected these

26

DETENTION MEMORANDUM                    12

1   arguments in a published order. *United States v. Bibbs*, 488 F.Supp.2d 925 (N.D. Cal. 2007).

2   Not only does the defendant disagree with that order for the reasons stated above, but the order

3   grossly misstates the law applicable to this issue. Specifically, Judge Zimmerman held that the

4   Supreme Court in *United States v. Salerno,* 481 U.S. 744, 746-52 (1987) "held that a detention

5   hearing is not a 'criminal prosecution' to which the Sixth Amendment applies." *Bibbs,* 488

6   F.Supp.2d at 926. *Salerno* held no such thing. The passages cited by Judge Zimmerman refer to

7   a discussion by the Court as to whether pretrial detention is "punishment" for purposes of the

8   *Due Process Clause*, which of course is contained in the Fifth Amendment, not the Sixth.

9   Moreover, the Supreme Court, in the very portion of its opinion cited by Judge Zimmerman,

10  concludes that a detention hearing, although regulatory in nature, survives a Due Process

11  challenge only because of the fact that a defendant is entitled to a "full-blown adversary hearing."

12  Although the Court did not define what it envisioned to be a "full-blown adversary hearing," the

13  defendant respectfully submits that such a hearing hardly occurs when the Government is able to

14  produce unreliable hearsay without affording the defendant the right to confront adverse

15  witnesses.[3] In addition, Judge Zimmerman refers to other cases where, he apparently believes,

16  courts have held that the *Crawford* right to confront witnesses *under the Sixth Amendment* does

17  not apply to detention hearings. *See, e.g., United States v. Gebro,* 948 F.2d 1118 (9th Cir. 1991);

18  *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986); *United States v. Hall*, 419 F.3d 980 (9th

19  Cir. 2005). Of these cases, neither *Gebro* or *Winsor* even address the Sixth Amendment, and

20  both pre-date Crawford. And is discussed above at some length, *Hall* if anything supports rather

21  than undermines the defendant's claims.

22       For these reasons, *Bibbs* should not be followed by this court.

23

24  _____

25       [3] Nowhere in *Salerno* does the Supreme Court address the issue of Government proffers;
    that may be due in part to the fact that the Bail Reform Act expressly allows the defendant to
26  present evidence by was of proffer, but contains no such similar provision relating to
    Government proffers. *See* 18 U.S.C. § 3142(f)(2)(B); *see also* discussion *infra.*

DETENTION MEMORANDUM          13

**III.    At The Least, Mr. Smith Has The Right To Confront Adverse Witnesses in Detention Hearings Under The Due Process Clause**

Even if this Court were to conclude that a bail hearing is not part of a criminal prosecution where the Sixth Amendment right of confrontation applies, Mr. Smith would nonetheless be entitled to confront adverse witnesses under the Due Process Clause.

Mr. Smith recognizes that the Ninth Circuit, soon after the Bail Reform Act was passed, held that the defendant had no absolute due process right to confront adverse witnesses at a detention hearing. *United States v. Winsor*, 785 F2d 755 (9th Cir. 1986). However, if *Winsor* is read to prohibit a defendant from ever having the right to challenge a Government proffer by insisting that the witness be ordered to appear for cross-examination, the right to cross-examine witnesses contained in the Bail Reform Act would be meaningless because the Government could proceed in all cases by way of proffer only. It can be argued, then, that Congress's codification of the right of cross-examination reflects its recognition that there will be times that in order to assure the integrity (and thus the constitutionality) of a bail hearing, due process concerns require the production of certain witnesses. Indeed, some courts have held that when fundamental fairness so requires, a court may order the Government to call witnesses for cross-examination at a detention hearing. *See, e.g. United States v. Hammond,* 44 F. Supp. 2d 743 (D. Md. 1999).

In *Hammond*, the Government proffered a police report, rather than calling the officers themselves, to support an allegation that the defendant had violated 18 U.S.C. § 922(g)(1). *Hammond*, 44 F.Supp.2d at 744-45. The police report alleged that the officers had been attempting to arrest the defendant when he ran from them, removed a gun from his waistband, and dropped it. *Id.* The court held that:

> [W]hen the evidence proffered is the uncorroborated statement(s) of one or two police officers who allegedly observed a single act committed by the defendant, and where there is no other evidence offered in support of the eyewitness testimony, the Court should consider the proffer with great care and accord it limited weight . . . . [T]he judicial officer should require the government to present live testimony able to withstand

confrontation, long- and well-recognized as the "greatest legal engine ever invented for the discovery of truth."

*Id.* at 746 (citing *California v. Green*, 399 U.S. 149, 158 (1970)).

Also, as is discussed *infra*, the Supreme Court, when called upon to determine the validity of the Bail Reform Act, noted that the Act did not violate a defendant's due process rights *only* because of the procedural safeguards which assured that the detention decision was accurate. *See Salerno*, 481 U.S. at 751. The Court in *Salerno* reiterated that the Bail Reform Act conformed with the requirements of due process only because, "[i]n a *full-blown adversary hearing*, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *Salerno*, 481 U.S. at 750 (emphasis added).

The Supreme Court has never passed upon the issue whether a bare proffer of a witness statement at a detention hearing would satisfy the Due Process Clause. However, various courts, including the Ninth Circuit, have held in analogous situations that such a proffer would not satisfy the due process. *See, e.g., Barnes v. Johnson*, 184 F.3d 451 (5th Cir. 1999) (Due Process Clause requires certain minimal safeguards to protect the limited liberty interest at stake in a parole revocation hearing, including "the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation"); *United States v. Simmons*, 812 F.2d 561 (9th Cir. 1987) (probationers and parolees have a right to confront and cross-examine adverse witnesses unless a judge finds good cause not to allow confrontation); *United States v. Martin*, 984 F.2d 308 (9th Cir. 1993) (the Due Process Clause requires a balancing test for parole and probation revocation hearings); *United States v. Kindred*, 918 F.2d 485 (5th Cir. 1990) (same); *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986) (same); *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983) (same); *United States v. Myers*, 896 F. Supp. 1029 (D. Or. 1995) (police reports insufficient; defendant's interest in cross-examination outweighed the Government's interest in not producing a witness under the balancing test

1  required by the Due Process Clause); *Downie v. Klincar*, 759 F. Supp. 425 (N.D. Ill. 1991) (the

2  Due Process Clause requires some right to confrontation in parole revocation hearings).

3          The Ninth Circuit's recent decision in *United States v. Hall,* 419 F.3d 980 (9th Cir. 2005),

4  and the decision it rested upon, *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999), are

5  highly relevant.  As noted in Section C. above, the issue in *Hall* was whether the defendant in a

6  supervised release violation hearing had the right under the Sixth Amendment to confront

7  adverse witnesses. Although the court noted that he did not have such a right because the

8  supervised release hearing was not part of the criminal prosecution, the court nonetheless held

9  that the defendant had a due process right to confront some witnesses.  *Id.* at 986.  This ruling

10 was based on the Ninth Circuit's earlier decision in *Comito*.

11         The issue before the court in *Comito* was whether the introduction of hearsay evidence in

12 a supervised release violation hearing satisfied the defendant's due process right to confront

13 adverse witnesses.  The facts of the case revealed that the defendant had been charged with

14 various supervised release violations, one of which was based upon statements allegedly made by

15 the defendant's ex-girlfriend to a probation officer that the defendant had engaged in fraudulent

16 behavior.  *Id.* at 1168.  At the district court's revocation hearing,  the court allowed the

17 Government to introduce the fraud allegations through the testimony of the probation officer,

18 rather than the girlfriend herself.  *Id.*  The defendant objected, claiming that his right to confront

19 adverse witnesses was violated by the allowance of this hearsay testimony. *Id.*

20         The court agreed with the defendant and reversed the revocation order.  The court first

21 concluded that a defendant had a limited due process right to confront adverse witnesses at a

22 supervised release revocation proceeding, just as a defendant had such a right in a probation and

23 parole revocation hearing.  *Id.* at 1170.  While the court acknowledged that the right to confront

24 adverse witnesses was not absolute, and could be circumvented by a showing by the Government

25 that there was good cause not to call a given witness, the question whether the Government

26 satisfied the good cause test in turn depended upon a balancing test.  *Id*. at 1171-72.  This

1  balancing test required the court to weigh  the significance of the defendant's right to

2  confrontation against the Government's explanation as to why the witness could not, or was not,

3  called at the hearing. *Id.*

4         Applying that test to the facts before it, the court in *Comito* determined that the

5  statements of the defendant's girlfriend that the defendant had engaged in criminal activity were

6  crucial to the revocation determination.  *Id.* at 1171.  Moreover, because the statements by the

7  girlfriend to the probation officer were unsworn hearsay statements, they were, as the court put it,

8  "the least reliable type of hearsay." *Id.*  Thus, the defendant's "interest in asserting his right to

9  confrontation [was] at its apogee." *Id.*  Further, the court concluded that the Government had not

10  shown good cause for its failure to produce the ex-girlfriend at the hearing.  Therefore, the court

11  determined that the defendant's constitutional rights had been violated.  *Id.* at 1172.

12         The importance of *Comito* to the issue of what procedural rights a defendant possesses at

13  a bail hearing cannot be over-emphasized.  *Comito* involved a supervised release violation

14  proceeding, where a defendant has already been convicted of a crime and thus had a limited

15  liberty interest.  In contrast, bail hearings involve the freedom of presumptively innocent

16  individuals.  Not only is a defendant's liberty interest stronger in bail proceedings, but the

17  standard of proof is higher; unlike a revocation proceeding, where the standard of proof is a

18  preponderance of evidence, the standard of proof at a detention hearing is clear and convincing

19  evidence, at least with respect to the dangerousness prong of the detention statute.  Thus, it is

20  clear under the reasoning of *Comito* that a mere proffer about a given witness's  testimony at a

21  detention hearing violates the Due Process Clause.

22         Mr. Smith again recognizes that there is a tension between *Winsor* and the *Comito* line of

23  cases with respect to the due process rights of individuals at detention hearings.  He submits,

24  however, that the two cases can be easily reconciled through a ruling that although the due

25  process right to confront adverse witnesses is not absolute, that right may only be denied in

26

DETENTION MEMORANDUM              17

1    situations where the Government satisfies the balancing test set forth in *Comito*.[4]

2    **IV.    Even If The Production Of An Adverse Witness Is Discretionary, That Discretion Should Be Exercised In Favor Of Ordering The Adverse Witnesses To Appear**

3
4    There are certainly cases which were decided before *Crawford, Hall* and *Comito* which

     hold that the decision whether to require the production of witnesses by the Government at a
5
     detention hearing is an issue to be left to the sound discretion of the Court. *See, e.g., United*
6
7    *States v. Gaviria,* 828 F.2d 667, 670 (11th Cir. 1987). As noted above, however, *Crawford*

     changed the landscape with respect to confrontation rights and held that the right to
8
     confrontation, at least with regard to witnesses who provide testimonial evidence, is absolute.
9
10   *Hall*, in turn, suggests that if the court has discretion whether to require the production of

     witnesses, that discretion cannot and should not be exercised without a careful balancing of the
11
     factors set forth in *Comito*. But assuming those cases do not create the rights that Mr. Smith
12
13   claims he has with respect to detention hearings, there is absolutely no dispute about the fact that

     this Court could order the Government to produce witnesses in the exercise of its discretion. Mr.
14
     Smith suggests that this Court should do so for a number of reasons.
15
16   Outside of the fact that this Court would not be forced to decide the constitutional issues

     raised above if it decided to order the Government to produce any witness it plans to rely upon to
17
     secure the defendant's detention, it needs little emphasis that this is a serious case, and any
18
19   doubts about what process the defendant should be due must be resolved in favor of Mr. Smith.

     The Government bears the burden of proving that the defendant is a flight risk by a
20
     preponderance of evidence and danger by clear and convincing evidence. Thus, the Government
21
22   must carry its burden through the use of witnesses and exhibits, and the defendant must be

     afforded the right to challenge that evidence.
23

24   _____

25   [4] Even Judge Zimmerman recognized in *United States v. Bibbs*, 488 F.Supp.2d 925 (N.D.
     Cal. 2007), that *Winsor* suggested that a defendant might have a right in certain situations to
26   confront adverse witnesses. *Bibbs,* 488 F.Supp.2d at 926. Mr. Smith contends that this
     observation is true, but extends beyond the type of disputes set forth in *Bibbs*.

DETENTION MEMORANDUM                 18

1    For all of these reasons, the Court must order the Government to produce witnesses

2    subject to cross examination at the detention hearing.  This request is particularly directed at any

3    police witnesses whose claims about the defendant's actions on the day of his arrest will be

4    referenced at the hearing, or any sources which might be relied upon to support allegations about

5    Mr. Smith's general character or affiliation with groups or gangs.[5]

6

7    Dated: February 22, 2008

8

9                                        Respectfully submitted,

10

11                                       BARRY J. PORTMAN
                                         Federal Public Defender
12
                                              /s/
13
                                         GEOFFREY A. HANSEN
14                                       Chief Assistant Federal Public Defender

15

16

17

18

19

20

21

22

23    ─────────────────

24        [5] Of course, mere allegations that a defendant is associated with a group or gang cannot
      justify a defendant's detention.  *See United States v. Hammond*, 204 F.Supp.2d 1157, 1164 (E.D.
25    Wis. 2002)(Government "cannot obtain detention simply by associating defendant with a
      dangerous organization such as the Outlaws."); *United States v. Jackson*, 845 F.2d 1262, 1266
26    (5th Cir. 1988)(defendant's association with gang may be considered, but generalized allegations
      about acts of group insufficient to justify detention).

DETENTION MEMORANDUM                    19